UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

IBS, INC.,
d/b/a Insurance Brokerage Services,

        Plaintiff,

        v.                                Case No. 23-C-1097

AMERITAS LIFE INSURANCE CORP.,

        Defendant.

**DECISION AND ORDER GRANTING MOTION FOR PARTIAL DISMISSAL**

      This is a straightforward breach of contract action which has been complicated by the addition of two quasi-criminal claims. Plaintiff IBS, Inc., doing business as Insurance Brokerage Services, claims it had an exclusive contract with Defendant Ameritas Life Insurance Corporation, under which Ameritas agreed that it would continue to pay IBS commissions on dental and vision insurance purchased from Ameritas by members of United Service Association for Health Care (USA+) for as long as Ameritas continued to insure USA+ members. On July 18, 2022, Ameritas notified IBS that it was terminated and would no longer receive commissions. IBS brought this action in the Circuit Court for Outagamie County, Wisconsin, asserting claims for breach of contract, civil theft, and intentional misrepresentation/fraudulent inducement. Ameritas removed the case to federal court based on diversity of citizenship under 28 U.S.C. § 1332. The case is before the court on Ameritas' motion to dismiss IBS's two alternative claims for civil theft and intentional misrepresentation. For the following reasons, Ameritas' motion will be granted.

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a complaint must have factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id.* Thus, a simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations marks omitted); *see also Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

**ALLEGATIONS CONTAINED IN THE COMPLAINT**

IBS is an insurance brokerage company incorporated under the laws of Wisconsin, with its principal place of business in Kaukauna, Wisconsin. Compl. ¶ 5, Dkt. No. 1-2. Ameritas is an insurer incorporated under the laws of Nebraska, with its principal place of business in Nebraska. *Id.* ¶ 6. IBS was originally approached by USA+ in the early 2000s to obtain vision and dental insurance for its association members. IBS procured insurance for USA+ from Ameritas, and IBS remained the agent of record receiving commissions from Ameritas on insurance purchased by

USA+ members.  *Id.* ¶ 9.  At that time, Gordon Williamson was the primary agent for IBS, handling negotiations and broker agent agreements with Ameritas and USA+.  *Id.* ¶ 10.

In or around 2015, Gordon's brother, Todd Williamson, was approached by Team Corp., a marketing branch of USA+, with an offer to split the commissions IBS received from the policies issued to USA+ members by Ameritas.  *Id.* ¶ 11.  IBS agreed to split its commissions with Team Corp. and began to negotiate an updated agency agreement with Ameritas.  *Id.* ¶¶ 12–13.  During negotiations, but before signing the general agency agreement, IBS wanted to ensure there was a written agreement between IBS and Ameritas that required IBS to remain the exclusive broker of record for as long as Ameritas insured USA+ members.  *Id.* ¶ 14.  On February 19, 2015, Todd Williamson sent an email to Jeremy Earp at Ameritas stating: "We want something in writing showing we have an exclusive agreement as long as this group [USA+] is in effect with ameritas it stays with ibs."  *Id.* ¶ 15.  On February 24, 2015, Earp responded: "[Ameritas] already [has] an exclusive contract between USA+ and IBS along with a statement from Mary agreeing to this arrangement."  *Id.* ¶ 16.  Mary Cranon is the executive director for USA+.  *Id.* ¶ 17.  In reliance on this representation—that an exclusive contract existed separate from the 2015 general agency agreement—IBS alleges it executed the general agency agreement on February 26, 2015.  *Id.* ¶ 18.

After executing the general agency agreement, IBS provided its services under the terms of the exclusive contract as represented by Earp from Ameritas.  *Id*. ¶ 19.  Consistent with the general agency agreement, IBS remained the broker of record from 2015 through 2022.  *Id.* ¶ 20.  On July 18, 2022, IBS was notified that it was removed as the broker of record and was being terminated effective July 1, 2022.  *Id.* ¶ 21.  On August 24, 2022, Todd Williamson informed Ameritas that "IBS and Ameritas legal have a contract in place for the life of the above mentioned group.  As long as the group is in force it shall be IBS Inc [sic] as the agent of record.  IBS Inc

3

[sic] will continue to receive compensation until the group is no longer in force with Ameritas." *Id.* ¶ 22. Ameritas nevertheless has refused to pay IBS commissions on insurance purchased by USA+ members. *Id.* ¶ 23. Two Ameritas managers, Jeremy Earp and Bob Gevelinger, are alleged to have recently confirmed that an exclusive contract between Ameritas and IBS, in fact, exists. *Id.* ¶ 24. Despite this confirmation, Ameritas has persisted in its refusal to pay IBS any commissions.

Based on these allegations, IBS has asserted a breach of contract claim against Ameritas and two alternative claims: statutory civil theft, in violation of Wis. Stat. §§ 943.20 and 895.446, and intentional misrepresentation/fraudulent inducement. *Id.* Ameritas seeks dismissal of both of IBS's alternative claims.

## ANALYSIS

### A. Civil Theft

IBS alleges that in the event that the court finds it did not have an exclusive contract with Ameritas, then "Ameritas engaged in intentional conduct prohibited by Wisconsin Statutes § 943.20(1)(a) and § 940.20(1)(d). *Id.* ¶ 33. The claim is predicated upon Wis. Stat. § 895.446, which creates a civil remedy for damages or losses caused by conduct amounting to theft under the State's criminal code. In addition to actual damages caused by the conduct, a prevailing plaintiff may recover costs of investigation and litigation, including attorneys' fees, and exemplary damages of up to three times the amount of actual damages. Wis. Stat. § 895.446(3).

IBS has asserted two civil theft claims in the alternative to its breach of contract claim. Compl. ¶¶ 32–39. The first is a claim of civil theft by misappropriation under Wis. Stat. § 943.20(1)(a). The second is a claim for theft by fraud under Wis. Stat. § 943.20(1)(d). Neither has merit.

4

Theft, as defined in § 943.20(1)(a) of the Criminal Code of Wisconsin, is committed by one who intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without consent and with intent to deprive the owner permanently of possession of the property. Wisconsin Jury Instruction (Wis. JI) Criminal 1441: Theft-§ 943.20(1)(a). Under Wisconsin law, civil theft requires the victim to have an ownership interest in the property stolen. *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 494 (7th Cir. 2019). It is not enough for a plaintiff to allege that the defendant owes him money. "If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property." *Kentuckiana Healthcare, Inc. v. Fourth St. Sols., LLC*, 517 F.3d 446, 447 (7th Cir. 2008).

IBS's claim, at least insofar as it appears from the complaint, is that Ameritas has breached the contract between IBS and Ameritas that entitled IBS to continue receiving commissions on Ameritas insurance products purchased by USA+. A commission is a percentage of the sales price that the seller (here, Ameritas) receives from the buyer (USA+) for the product sold, which the seller, in turn, agrees to pay to the employee or agent (IBS) who handled the sale. *See Yi v. Sterling Collision Cntrs., Inc.*, 480 F.3d 505, 508 (7th Cir. 2007) ("The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold."). Thus, IBS's claim is not that Ameritas has taken and carried away, used, transferred, concealed, or retained possession of IBS's property, but rather that Ameritas has refused to pay IBS the money IBS believes it is owed as commissions for the sale of Ameritas products. Whether IBS is contractually entitled to such payment or not, Ameritas's failure to pay is not theft. Indeed,

5

absent an enforceable contract, IBS has no claims to the commissions at all. Its alternative claim for civil theft is, as Ameritas suggests, incoherent.

IBS's claim for theft by fraud under § 943.20(1)(d) fails for much the same reason. "Theft, as defined in § 943.20(1)(d) of the Criminal Code of Wisconsin, is committed by one who obtains title to property of another person by intentionally deceiving that person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." Wis. JI-Criminal 1453A: Theft by Fraud: Representations Made To Owner– § 943.40(1)(d). The property to which IBS claims it is entitled is a percentage of the money that Ameritas received in payment for its insurance products. IBS does not allege, nor could it, that it handed over possession of its property to Ameritas based on Ameritas' fraudulent representations. Instead, its claim is that Ameritas owes IBS a percentage of its property, i.e., the money it received in payment for its insurance products, pursuant to its alleged exclusive contract. This is not theft by fraud.

In sum, the complaint fails to allege a claim for civil theft. If the mere allegation that the defendant is legally obligated to pay the plaintiff money was enough to state a claim for civil theft, we would commonly find such claims in most business litigation. There is no need to increase the complexity of nearly every business dispute by adding such claims and thereby increase the time and expense needed to resolve such cases.

### B. Intentional Misrepresentation/Fraudulent Inducement

IBS's claim for intentional misrepresentation, to the extent it does not overlap with its theft by fraud claim, makes even less sense. IBS contends that should the court find that there was no exclusive contract at the time, then Ameritas' representation to Todd Williamson that there was an exclusive contract constitutes a knowing and false representation upon which IBS relied to its

6

Case 1:23-cv-01097-WCG   Filed 12/28/23   Page 6 of 8   Document 16

detriment in entering into the general agency agreement with Ameritas. *Id.* ¶¶ 42–49. IBS's theory is that if it did not have a contract with Ameritas that gave it the continued right to commissions on Ameritas products sold to USA+ members for as long as Ameritas continued to sell insurance products to USA+ members, then Earp made a misrepresentation that induced IBS to sign the 2015 general agency agreement. *Id.* ¶ 18. That would constitute, as IBS specifically asserts in Count III of its complaint, fraud in the inducement. The usual remedy for fraud in the inducement is rescission, but it is not the only one. *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 20, 302 Wis. 2d 41, 56–57, 734 N.W.2d 855, 863 (holding that election-of-remedies doctrine does not bar borrowers from obtaining damages in their action against lender for fraudulent misrepresentations that induced borrowers to sign option that allowed lender to purchase part of borrowers' property); *see also* 26 WILLISTON ON CONTRACTS § 69:4 (4th ed.) ("Fraud may become important either for the purpose of giving the defrauded person a right to sue the fraudulent person for damages in an action of deceit, or its equivalent, or to enable the defrauded person to rescind the transaction.").

IBS is not seeking rescission of the 2015 general agency agreement. On the contrary, IBS claims that contract is indefinite and Ameritas had no right to terminate it. In other words, IBS is seeking to enforce the rights it believes its contract gives it. The only remedy IBS could be seeking, then, is damages it claims to have sustained as a result of signing the 2015 general agency agreement. But IBS fails to allege any such damages. IBS suggests that it would not have signed the 2015 general agency agreement had it not been for Earp's representation that the contract was exclusive. Compl. ¶¶ 42–48. But nowhere does IBS plausibly allege that it sustained damages by signing that agreement. In fact, it acknowledges that it continued to receive commissions under that agreement for an additional seven years. *Id.* ¶ 37. Absent a plausible allegation that it suffered damages as a result of the alleged fraud, IBS's claim for intentional misrepresentation/fraudulent

7

inducement fails.  *See, e.g., Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 726 (7th Cir. 2008) ("Extra's theory is that Sharman made oral misrepresentations in the negotiation in order to induce Extra to agree to the release.  That sounds like a fraud designed to induce the victim to sign a contract; and the remedy for fraud in the inducement is to rescind the contract . . . .  But Extra is emphatic that it is not charging fraud in the inducement and has no desire to rescind the release.  The fraud it charges is an oral promise—to retain it as a distributor for Case Brasil—that Case did not intend to honor.  But what damages could it have incurred as a result of the fraud?  It is not contending that it would be better off had it not been induced to sign the release.  It complains about being terminated as a distributor.  But that is the subject of its Brazilian suit for breach of the distributorship contract.  It does not argue that the termination was more costly to it because of Sharman's promise not to terminate it.") (applying Illinois law).  It follows that Count III of IBS's complaint fails as well.

## CONCLUSION

For these reasons, Ameritas' partial motion to dismiss (Dkt. No. 4) is **GRANTED**.  IBS's claims for civil theft and intentional misrepresentation/fraudulent inducement are dismissed.  All that remains is IBS's claim for breach of contract.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge